# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> SALE, LLC., d/b/a AS GOOD AS IT GETS CAFÉ <br><br> DEBTOR | Chapter 11 <br> Subch. V <br> Case No. 23-10545-CJP |

### OBJECTION BY COMMISSIONER OF MASSACHUSETTS DEPARTMENT OF REVENUE TO CONFIRMATION OF THE DEBTOR'S PLAN OF REORGANIZATION OF SALE, LLC

TO THE HONORABLE CHRISTOPHER J. PANOS, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Geoffrey E. Snyder, as he is Commissioner of the Massachusetts Department of Revenue (hereinafter, "MDOR"), a creditor and party in interest in the above-captioned matter, and pursuant to, *inter alia*, the provisions of 11 U.S.C. §§ 1128 and 1129, and in accordance with Federal Rules of Bankruptcy Procedure Rule 3020, objects to the confirmation of the *Plan of Reorganization of Sale, LLC.* (the "Plan"). In support of this objection, MDOR states the following:

### I. FACTS AND BACKGROUND

#### *A. Procedural Facts*

1. On April 10, 2023 (the "Petition Date"), the debtor, Sale LLC. (the "Debtor"), filed a voluntary petition for relief under subchapter V of chapter 11.

2. Since the Petition Date, the Debtor has served as the debtor-in-possession pursuant to Section 1184 of the Code. On the Petition Date, the Debtor owned and operated three stand-alone restaurants under the trade name of "As Good As It Gets" in Acton, Norwood, and

Wilmington, and a café in the Woburn Toyota facility. About a month or so into this case, the Debtor closed the Acton restaurant, and in the later part of this summer, the Debtor closed the Norwood restaurant.

3. After the Petition Date, the Debtor as debtor-in-possession has been required to timely to file all returns to pay all taxes and timely to pay all taxes as they become due after the Petition Date not only as a matter of applicable non-bankruptcy law, but also as a matter of bankruptcy law itself. 11 U.S.C. §§ 521(j) & 1112(I) and 28 U.S.C. § 960.

4. On April 12, 2023, David B. Madoff, Esquire (the "Trustee") was appointed as the subch. V trustee in this case.

5. On May 31, 2023, the Court entered the *Order Authorizing Debtor's Use of Cash Collateral* (the "Cash Collateral Order"), which provided in part that, "On or before the 30th day of each month in which this Order remains in effect, the Debtor shall make an adequate protection payment to the Massachusetts Department of Revenue ("MDOR") in the amount of $5,400, in addition to its replacement lien." MDOR had been granted replacement liens in the interim cash collateral order that was entered on April 13, 2023.

6. The Cash Collateral Order also provided that, "The Debtor shall timely file and fully pay all post-petition taxes as and when they become due."

7. On August 10, 2023, the Court entered the *Order Authorizing Debtor's Continued Use of Cash Collateral* (the "Continued Cash Collateral Order"), which authorized the Debtor to use cash collateral until October 17, 2023. This order retained the provisions in the Cash Collateral Order that are quoted in the prior two paragraphs, with the tax provision supplemented by a provision addressing certain tax delinquencies that had been raised at the hearing on July

26, 2023.[1]

8.  As of the date of this writing, the Debtor has made three adequate protection payments, which were received by MDOR in the amount of $5,400 on or about June 8, 2023; July 26, 2023; and September 12, 2023. In accordance with its published procedures, MDOR applied those payments to the earliest periods in its original secured claim. The amended proof of claim filed by MDOR on September 21, 2023, which is further described below, reflects the changes in the accounts that resulted from those payments.

9.  On July 10, 2023, the Debtor filed the Plan.

### B. Claims Held by MDOR

10. On September 21, 2023, MDOR an amended proof for its pre-petition claim in the total amount of $293,617.63 (the "MDOR Claim"). This claim consists of a secured claim in the amount of $247,159.67 (the MDOR Secured Tax Claim"), a priority unsecured tax portion in the amount of $46,236.96 (the "MDOR Priority Tax Claim"), and a general unsecured portion in the amount of $221.00.

11. The MDOR Secured Tax Claim consists of the Debtor's unpaid assessed monthly meals taxes for the months of March 2021-September 2022 (Wilmington), January 2022-September 2022 (Norwood), and December 2021-September 2022 (Acton), together with their accrued pre-petition statutory interest and penalties.

12. As stated on page 4 of MDOR's proofs, for MDOR Secured Tax Claim, "Notice of statutory tax lien [was] filed pursuant to M.G.L. c 62C Sec 50." In this case, as all of the Debtor's property is personal property and not real property, so the filing office for MDOR's notices of Massachusetts tax lien ("NMTL") is the Office of the Secretary of State (the "SOS"). Between January 21, 2022 and January 1, 2023, MDOR filed seven NMTLs with the SOS.

---

[1] By August 15th, the Debtor had paid those taxes.

Annexed hereto as Exhibit 1 is a true copy of a Lien Search from the SOS listing and providing the recording information of the seven NMTLs against the Debtor.

13. The MDOR Priority Tax Claim consists of the Debtor's unpaid assessed meals taxes for January and February 2023 for each of Wilmington, Norwood, and Woburn locations, and the meals taxes for January 2023 for the Woburn location[2], together with the accrued pre-petition statutory interest on those taxes. The general unsecured portion of the MDOR Claims consists of the pre-petition statutory penalties for each of the priority unsecured taxes.

14. The combined amount of the MDOR Secured Tax Claim and the MDOR Priority Tax Claim is $293,396.63.

15. On September 21, 2023, MDOR filed an administrative claim for the Debtor's unpaid post-petition taxes in the total amount of $41,836.32, which consists of the Debtor's assessed by way of its tax return, but unpaid meals taxes for all three locations (Wilmington, Norwood, and Woburn) for July and August 2023, plus Woburn's meals taxes for April, May, and June 2023, together with accrued interest and penalties as of the date of the claim.

16. On September 12, 2023, MDOR issued *Technical Information Release 23-10: Interest Rate on Overpayments and Underpayments*. ("TIR 23-10"). Under M.G.L. c. 62C, § 32(f), the statutory rate of interest for an unpaid or underpaid tax is the Federal short-term rate plus four percentage points, compounded daily. As announced in TIR 23-10, the interest rate for underpaid taxes for the fourth quarter of 2023 will be at the annualized rate of 9%, compounded daily.

## II. GROUNDS FOR OBJECTION

---

[2] On or about August 13, 2023, the Debtor filed monthly tax-due meals tax returns for the Woburn location for January 2023 through August 2023.

### *A. Applicable Law and Standards*

17. In order to confirm a plan under Chapter 11, the Bankruptcy Court must find that both the proponent and the plan comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1) & (2). Here, the Debtor is the Plan's proponent. If a plan does not comply with the requirements set forth in, *inter alia*, Section 1129(a)(9)(C)&(D) of the Bankruptcy Code, the Court cannot confirm the plan.

18. If a plan does not provide for the payment in full of an allowed priority or secured tax claim on or before the effective date of the plan, or if the taxing authority has not agreed to an alternative treatment, then Section 1129(a)(9)(C) of the Code requires that at a minimum that the plan provide the holder of the priority unsecured tax claim (or the secured/priority tax claim) with:

> regular installment payments in cash -
>
> (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
>
> (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
>
> (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))….

19. In this case, the fifth anniversary of the Petition Date will be May 5, 2028.

20. Section 1129(a)(9)(D) of the Code provides that:

> with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

21. The taxes that constitute the MDOR Secured Tax Claim are meals taxes, which in

the absence of their secured status would be entitled to a priority status under Section 507(a)(8)(C) of the Code.

22. Section 511 of the Code states that:

(a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

(b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

23. Assuming that the Plan is confirmed in the fourth quarter of 2023, the Section 511 interest rate for the payment of the MDOR Secured Tax Claim and the MDOR Priority Tax Claim will be 9% per annum, compounded daily.

### B. Specific Objections

24. A significant problem that the Debtor had prior to this bankruptcy is that it would fall behind in its taxes, and while it was catching up on those delinquent taxes, the Debtor was unable to pay its current taxes and was always playing from behind.

25. Although it is a smaller sample size (just shy now of six months), the Debtor has been displaying the same behavior with his taxes in this case. While the Debtor did eventually pay (late) his April, May, and June meals taxes, it presently behind on paying its July and August meals taxes (and for Woburn, it has not paid any of its post-petition meals taxes, although those are more modest in amount in comparison to Wilmington or, when it was operating, Norwood).

26. While we would certainly hope that the Debtor will "catch up" with its delinquent tax payments by the time of the confirmation hearing, which by then would include the September taxes, the persistence of this behavior or dynamic is disconcerting and raises serious questions about the Plan's feasibility. There is a significant probability that in making its various

plan payments, the Debtor will again (or still) fall behind in its post-confirmation taxes. While the Plan cannot address the Debtor's post-confirmation taxes, what we have seen in this chapter 11 administrative period strongly suggests that in several months the Debtor will have accumulated a sizeable post-confirmation tax debt that will prompt MDOR to seize and close the business. The Chapter 11 administrative period is a dress rehearsal of how a debtor will operate post-confirmation, and in this case, the reviews are not great.

27. MDOR has an administrative claim of $41,836.32, which has been continuing to accrue statutory interest and penalties since it was filed, and by the time of the confirmation hearing, may also include the Debtor's various Massachusetts taxes for the periods ending September 30, 2023. The Plan provides that administrative claims will be paid "over a period not to exceed 12 months." However, the administrative claims held and to be held by MDOR are almost as much as the amounts estimated in the financial projection submitted by the Debtor in support of the Plan.

28. In support of the Plan, the Debtor has submitted an appraisal by Paul E. Saperstein Co., Inc. (the "Saperstein Appraisal"), which opined that the "forced liquidation value" of the Debtor's assets would total $60,350. After payment of the purchase money security interests on two vehicles, and adding an estimated $30,000 in cash on hand, the Debtor suggests that the value of MDOR's interests in the assets of the Debtor is $51,901.00. The Saperstein Appraisal defines "forced liquidation value" as:

> [T]he estimated gross amount expressed in terms of money which could be typically realized from a properly advertised and conducted public sale (auction), with the seller compelled to sell, as of a specific date, with a sense of immediacy on an as-is/where-is basis.[3]

29. If confirmed, the Debtor will continue as a going concern, and the Plan will be

funded from the Debtor's future business operations. The Plan does not contemplate a liquidation of the Debtor's business.

30. Section 506(a) of the Code requires that in a determination of secured status, "such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property…." The purpose here is value the Debtor as a going concern, and no tin a forced liquidation.

31. Even if we were to use the Debtor's valuations, the payment of only a portion of the penalties in the MDOR Secured Claim would be affected. In the secured claim of $247,159.67, there are secured statutory penalties of $22,413.42. With a valuation of $51,901, the sum of $4,706.59 in penalties would remain secured and the sum of $17,706.83 in penalties would become general unsecured.[4] The resulting combined MDOR Secured and Priority Tax Claim would be $275,689.80 (the "Revised Combined MDOR Tax Amount").

32. Assuming that the payment term is fifty-four (54) months, and that the interest rate to be paid form the Effective Date is (as it is now) 9%, the monthly required payment on the Revised Combined MDOR Tax Amont would be approximately $6,181.30. In the projections submitted with the Plan, the Debtor is contemplating a monthly payment of $5,400 for that purpose.

33. While the Debtor would render most of the MDOR Secured Tax Claim to a Priority Tax Claim, in the treatment of priority tax claims found on page 5 of the Plan, the Debtor has only provided for payment of the Internal Revenue Service's priority tax claim, and not MDOR's priority tax claim or the portions of MDOR secured tax claim that would become a priority tax claim.

---

[3] Plan Exhibit Asset Appraisal [Doc 68-1], pp. 2-3.
[4] (22,413.42/247,159.67) X 51,901 = 4,706.58; and 22,413.42 − 4,706.58 = 17,706.83.

34. As for what would be the remaining portion of the MDOR Secured Tax Claim, it also must be paid within sixty (60) months of the Petition Date, with interest at currently 9% from the Effective Date. However, the Plan does not provide the length of the payment term, although in chart appearing on pp. 5-6, the Plan does state, "equal monthly instalments ending no later than April 9, 2023 (sic)."

35. MDOR objects to the proposed injunction to the extent it would impose any restrictions on MDOR and its actions beyond what a discharge would otherwise provide. In addition, the injunction the Debtor seeks to impose in Section 4.2 of the Plan is overbroad, and seemingly creates causes of action for persons not the Debtor.

36. However, as MDOR reads the proposed injunction, it would not affect either any assessment, collection actions or any other interactions of, against or with any responsible persons or potential responsible persons for any taxes originally assessed against the Debtor, or any assessments, collections actions or any other interactions with any persons, including the Debtor, for any post-confirmation taxes of the Debtor, including the seizure of the Debtor's business for the failure to pay its post-confirmation taxes. If the Debtor disagrees with any of these statements, let it speak now or forever hold its peace.

37. The provisions regarding default and remedies are inadequate, particularly if a default occurs in the Debtor's plan tax payments. The Plan already maximizes the possible payment terms for secured and priority taxes, so no plan modification would be possible. Unless it is addressed and waived in a final decree, the filing fee to reopen the case would be a barrier that improperly would insulate the Debtor from any number of plan defaults.

[*The remainder of this page was intentionally left blank by the writer.*]

**WHEREFORE**, Geoffrey E. Snyder, as he is Commissioner of the Massachusetts Department of Revenue, respectfully requests that this Honorable Court deny confirmation of the *Plan of Reorganization of Sale, LLC.*, and to grant him such other and further relief as the Court deems proper and just.

Respectfully submitted,

**Dated: October 6, 2023**

**GEOFFREY E. SNYDER,
COMMISSIONER
MASSACHUSETTS DEPARTMENT OF REVENUE**

**By his attorneys,**

**ANDREA JOY CAMPBELL
ATTORNEY GENERAL OF MASSACHUSETTS**

**Michael T. Fatale, General Counsel
Special Assistant Attorney General**

 **/s/    Stephen G. Murphy**
**Stephen G. Murphy (BBO # 542427)
Counsel to the Commissioner
Massachusetts Department of Revenue
Litigation Bureau
100 Cambridge Street, P. O. Box 9565
Boston, MA 02114
Tel. No.: (617) 626-3305
Fax No.: (617) 660-3945
Email: murphys@dor.state.ma.us**

# EXHIBIT 1

# Secretary of the Commonwealth of Massachusetts

William Francis Galvin

## Liens search

**Search by:**

(●) Name   ( ) Filing Number   ( ) Filing Date   ( ) Release Date

**Search by a company or an individual**

| Company name, or individual's last name: | First name: | Middle name: | Suffix: |
|---|---|---|---|
| "Sale LLC" | | | |

**Search:** check one or more   [x] Tax Liens   [x] Child Support Liens

Display [25 items ▼] per page         **Clear search fields**   **Search**

**Number of records: 7**   **Number of pages: 1**

| Name | Address | ID last 4 | Filing Number | Filing Type | Filing Date | Release Date | Note |
|---|---|---|---|---|---|---|---|
| SALE LLC, | 67 S BEDFORD ST, BURLINGTON, MA 01803-517 | 0655 | 00000227761 | Tax Lien | 01-21-2022 | | |
| SALE LLC, | 67 S BEDFORD ST, BURLINGTON, MA 01803-517 | 0655 | 00000222093 | Tax Lien | 04-12-2022 | | |
| SALE LLC, | 67 S BEDFORD ST, BURLINGTON, MA 01803-517 | 0655 | 00000224378 | Tax Lien | 09-01-2022 | | |
| SALE LLC, | 67 S BEDFORD ST, BURLINGTON, MA 01803-517 | 0655 | 00000228841 | Tax Lien | 09-08-2022 | | |
| SALE LLC, | 67 S BEDFORD ST, BURLINGTON, MA 01803-517 | 0655 | 00000223997 | Tax Lien | 11-03-2022 | | |
| SALE LLC, | 67 S BEDFORD ST, BURLINGTON, MA 01803-517 | 0655 | 00000220882 | Tax Lien | 12-09-2022 | | |
| SALE LLC, | 67 S BEDFORD ST, BURLINGTON, MA 01803-517 | 0655 | 00000233514 | Tax Lien | 01-11-2023 | | |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **SALE, LLC., d/b/a AS GOOD AS IT** | ) | **Subch. V** |
| **GETS CAFÉ** | ) | **Case No. 23-10545-CJP** |
| | ) | |
| **DEBTOR** | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I, Stephen G. Murphy, hereby certify that I have this day served a copy of the foregoing *Objection by Commissioner of Massachusetts Department of Revenue to Confirmation of the Debtor's Plan of Reorganization of Sale, LLC*, was served on all counsel of record upon filing via the ECF System as set forth on the accompanying Service List.

　　　　　　　　　　　　　　　　　　　　　　　　*/ s / Stephen G. Murphy*
　　　　　　　　　　　　　　　　　　　　　　　　Stephen G. Murphy, Esquire
　　　　　　　　　　　　　　　　　　　　　　　　Dated: October 6, 2023

## SERVICE LIST

**In re SALE, LLC.,**
**Chapter 11 (Subch. V), Case No. 23-10545-CJP**

- **John S Davagian**   jsdavagian@dgslawllp.com
- **Lorena Galvez**   lgalvez@rkpclaw.com
- **Richard King - B**   USTPRegion01.BO.ECF@USDOJ.GOV
- **Marques C Lipton**   marques@liptonlg.com, mlipton@ecf.courtdrive.com
- **David B. Madoff**   alston@mandkllp.com, MA28@ecfcbis.com
- **Stephen G. Murphy**   murphys@dor.state.ma.us
- **Lawrence A. Wind**   lawwind@dgslawllp.com